UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MARK GOODMAN,                               CASE NO. 9:16-CV-81742-DMM

    Plaintiff(s),

vs.

SECURITY MUTUAL INSURANCE
COMPANY OF NEW YORK,

    Defendant(s).     /

## MOTION TO STRIKE OR IN THE ALTERNATIVE IN LIMINE

Plaintiff, Mark Goodman, through undersigned counsel and pursuant to this Court's Trial Order as well as the Federal Rules of Civil Procedure, hereby moves to strike David Ahearn as an expert witness in this matter or in the alternative moves in limine to limit his testimony.

## BACKGROUND

Plaintiff, Dr. Goodman, a dentist, submitted a claim for benefits under two disability policies issued by Defendant, Security Mutual Ins. Co of New York ("Security Mutual"). Security Mutual outsourced the administration of Dr. Goodman's claim to CSC, a global technology company. Ultimately, after approximately a year of gathering voluminous documents and investigative information, Security Mutual, through CSC, denied Plaintiff's claim based primarily upon a single compulsory medical examination by

1

a physiatrist for which it initially paid $4200.[1]

Dr. Goodman claimed partial disability benefits at the outset of his claim in 2014, and in August 2015 claimed total disability benefits due to his concern for his patients' safety. Dr. Goodman suffers from osteophytic formations on his cervical spine which press not only on his spinal cord, but also the exiting nerve roots. This has caused significant pain to Dr. Goodman throughout his neck, left shoulder and left upper extremity as well as numbness and tingling into his left hand to the point that he began dropping dental instruments. Dr. Goodman also suffers from left shoulder derangement, including a partial rotator cuff tear and adhesive capsulitis, which restricts fluid movement of his shoulder.

During the claim, prior to denial, and prior to this lawsuit, CSC's employees never consulted a dentist to discuss the claim. In this lawsuit, Security Mutual's lawyers first identified a dentist that they seek to use as an expert. However, Security Mutual's expert disclosure did not comply with either this Court's pretrial order or Rule 26, as it was totally devoid of a statement signed by the expert. Security Mutual only recently, and far after the deadline for disclosure, attached a report from Dr. Ahearn, a dentist in Massachusetts. That report does not even remotely contain what the initial disclosure contemplated and seeks to provide medical opinions related to orthopedic conditions. This Motion seeks to strike Dr. Ahearn as an expert witness or alternatively limit his

---

[1] Since that time, the physician has likely billed more money to the insurance company, as he has prepared additional reports. In fact, he originally sought to charge Plaintiff $5,000 for a 1-2 hour deposition, later reducing that figure to $2,000.

2

testimony.

## AHEARN REPORT WAS UNTIMELY

Pursuant to this Court's scheduling order (DE 15), Defendant was required to provide Plaintiff not only with a list of expert witnesses, but also with expert reports as required by Rule 26(a)(2) by January 23, 2017. The scheduling order further provides that non-compliance with any provision of the order may subject the offending party to sanctions or dismissal (DE15 at par. 9). The order further states that it is the duty of all counsel to enforce the timetable to ensure an expeditious resolution of this matter.

Rule 26(a)(2), FedR.Civ.P., requires that any expert who has been retained or specially employed to provide expert testimony in a case must <u>sign</u> a report containing:

(1) A complete statement of all opinions the witness will express and the basis and the reasons for them;
(2) The facts or data considered by the witness in forming them.\;
(3) Any exhibits that will be used to summarize or support them;
(4) The witness's qualifications, including a list of all publications authored in the previous 10 years;
(5) A list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(6) a statement of the compensation to be paid for the study and testimony in the case.

On February 2, 2017, more than a week after the deadline for disclosure, Defendant first disclosed that it had retained David Ahearn, DDS as an expert. Attached hereto as Exhibit "1" is a copy of the expert disclosure Defendant provided to Plaintiff on February 2, 2017. That disclosure was not signed by Dr. Ahearn, did not

3

contain a report from Dr. Ahearn and, in fact, indicated that a report had not been completed. Likewise, the report did not provide the compensation that Defendant actually paid to Dr. Ahearn for his purported forthcoming opinion. In this disclosure, Defendant stated that Dr. Ahearn's "opinions will relate to the substantial and material duties of a general dentist, and Dr. Goodman's ability to perform such duties."

After receiving this disclosure, which was insufficient on its face, Defendant's counsel requested additional time to produce Dr. Ahearn's written, signed report. In an effort to cooperate, Plaintiff's counsel agreed to allow some additional time. See correspondence attached as Exhibit "2". However, Defendant did not provide Dr. Ahearn's report within the agreed-upon time frame. Dr. Ahearn's report was finally provided on February 23, 2017, a month after it was due.

As a result of this delay, neither Defendant nor Plaintiff could possibly comply with this Court's trial order requiring a deposition within 30 days of the disclosure deadline. Moreover, because Dr. Ahearn's report was so drastically different than the disclosure, Plaintiff could not possibly have anticipated the substance of the report from the disclosure that Defendant provided.

Specifically, Dr. Ahearn's written report does not address the "substantial and material duties of a general dentist. Dr. Ahearn did not discuss a single duty or procedure that a general dentist performs nor how it is performed. Having neither identified nor described Dr. Goodman's duties, Dr. Ahearn obviously could not and did not opine on whether Dr. Goodman could continue to perform any of those duties.

4

## **AHEARN'S TESTIMONY SHOULD BE LIMITED**
## **TO THE DUTIES OF A DENTIST**

Under Rule 702, Fed. R .Evid., "district courts must act as 'gatekeepers' which admit expert testimony only if it is reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). An expert may testify, if:

   (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
   (b) the testimony is based on sufficient facts or data;
   (c) the testimony is the product of reliable principles and methods; and
   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. *Geyer v. NCL(Bahams) Ltd.*, 203 F.Supp.3d 1212, 1214-15 (S.D.Fla. 2016).

In assessing the admissibility of expert testimony, the Eleventh Circuit mandates that the district court engage in a three-part inquiry to determine whether;

   (1) the expert is qualified to testify competently regarding the matters he intends to address;
   (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*; and
   (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id. At 1215; United States v. Frazier*, 307 F.3d 1244, 1260 (11th Cir. 2004). The proponent of the expert bears the burden of establishing by a preponderance of the evidence the expert's qualifications, reliability, and helpfulness. *Geyer*, 203 F.Supp.3d at 1215.

The "helpfulness" prong of the inquiry goes primarily to relevance. *Id.* Expert testimony which does not relate to any issue in the case is not relevant and therefore not

5

helpful. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court must evaluate whether the testimony is unreliable and irrelevant because of its inability to assist in factual determinations, its potential to create confusion and its lack of probative value. *Allison v. McGahn Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999).

According to Defendant's disclosure, Dr. Ahearn was proposed as an expert to explain the duties of a dentist and whether Dr. Goodman can perform those duties. His report and his testimony should be limited as such. Currently, Dr. Ahearn's report discusses Dr. Goodman's income, the order in which Dr. Goodman went to physicans, a description of dental hygienists' physical problems, comments on the propriety of Dr. Goodman's treatment for orthopedic conditions, workplace modification (although without any specific suggestions) and a recommendation for physical therapists in Portland, Oregon (Dr. Goodman lives in Florida). Dr. Ahearn's report goes far beyond the disclosure and certainly goes far beyond the issues in this case.

This case is a simple disability case involving a dentist who can no longer practice dentistry because he has been diagnosed and suffers from severe cervical spinal deformities causing pain and numbness in his neck and down his arm, which caused him to begin dropping dental instruments. Particularly, an MRI report performed on June 25, 2015 (a few months before he was no longer able to practice) showed that Dr. Goodman had facet arthrosis and bone growth which not only objectively compresses his nerve roots in his cervical spine, but also presses on Dr. Goodman's spinal cord in

his cervical spine. Attached as Exhibit "3" is the objective MRI report. Moreover, Dr. Goodman has demonstrable limitation in the rotation and flexion of his cervical spine, has received epidural injections (and is schedule for more) and has received an NCV/EMG nerve study which objectively demonstrates radiculopathy into Dr. Goodman's left arm at the nerve distributions that correlate with the MRI. See Composite Exhibit "4". The only question in this case is whether Dr. Goodman's medical condition prevents him from performing the substantial and material duties of his occupation as a dentist, thereby qualifying him for disability benefits under his policies.

If Dr. Ahearn is allowed to testify, his testimony should be limited to describing the procedures that Dr. Goodman was performing. Any extraneous testimony comparing a dentist to a dental hygienist, or discussing potential ergonomic changes to Dr. Goodman's office when Dr. Ahearn did not even see or evaluate Dr. Goodman's office are beyond the scope of the disclosure and are purely speculative. They do ont satisfy the "relevance" or "reliability" requirements discussed above.

Moreover, Dr. Ahearn's discussion of whether Dr. Goodman should have attended a compulsory examination before seeing his own physician is far beyond the scope of Dr. Ahearn's credentials, is purely argumentative, and is beyond his role as an expert witness who is supposed to be describing dental procedures.

Specifically, the following statements of Dr. Ahearn are unrelated to the duties of a dentist:

7

As a clinical dental practitioner I am always searching for ways to assist dentists who might benefit from improved health in the workplace.

however, with the exception of situations of extraneous injury or congenital malformation, the good news is that most of these cases can be resolved through workplace modification.

I was unable to discern from the records of Dr. Goodman's primary physician Dr. Livoti precisely how he was able to come to the conclusion that Dr. Goodman required partial disability. I simply did not find a diagnosis that was consistent with disability for the practice of dentistry nor that referral or remediation had been either suggested or undertaken. Further, his suggestions to avoid prolonged sitting greater than 20 minutes and to avoid prolonged reaching based on the insureds subjective reports are inconsistent with any need for restriction in dental practice.

I next turned my attention to the review by Dr. Carla Morton. Given the data in the Livoti patient record it is, in my opinion entirely reasonable that Dr. Morton would be unable to come to conclusive findings regarding the possibility of impairment. Unfortunately, subsequent to Dr. Morton's review of 03/30/2015, no further progress with the evaluation is made despite significant effort by the insurer to obtain an independent evaluation. The recommendation to visit Dr. Bradley Cash, a notable rehabilitation specialist, appears tobe rejected in favor of an examination by Dr. Steven Litman on or about 8/7/2015. It is stated in the record (by Dr. Goodman) that Dr. Litman recommended that Dr. Goodman immediately cease practice (0759) though in the files (0763) I am unable to see record of this recommendation.

Subsequently Dr. Goodman did agree to Independent Medical Examination by Dr. Cash. While I will not repeat the findings in the report I do find it notable that Dr. Goodman states that he is not interested in ergonomic evaluation or assistance and that he believes that his height made it difficult for him to perform dentistry with an acceptable posture. It should be noted that the median height for North American women is 5'3" and that over half of the dental practitioners graduating in the US are female. Therefore if this were a causal factor in dental disability or amongst hygienist, who are predominantly female, we would see a rash of ergonomic injuries that the data does not support. Nevertheless, dentists do develop RSI's and other workplace disabilities however, in the absence of true physical injury significant degeneration or congenital malformation the symptoms can invariably be mitigated by workplace corrective action.

Hygienists, on the other hand, do seem to be more prone to repetitive stress injuries. However, even in the case of hygiene practitioners, on more careful examination, it has been found that a combination of automation and workplace

> controls are generally able to rapidly remediate most, if not all, of these practitioners back to health.
>
> In the absence of workplace control measures I turned my attention to external signs of potential disability. In this we find the investigative work of EMSI Investigative Services to be instructive. In surveillance photos we see the subject bending and removing objects from a vehicle. The lifting of objects out of a sports car requires far more reaching and stretching than what is required in dental practice.
>
> As noted by prior examiners, there is no indication of efforts in the use of physical therapy or any other active remediation (stretching, chiropractic, massage therapy, yoga, etc.). I have found that the work of Bethany Valachi, PT, MS, CEAS, and Timothy Caruso, PT, MBA and there to be specifically helpful in this regard.
>
> In summary, based on my review of the extensive documentation regarding this case I am unable to discern a causal relationship between physical issues related to the claimant and the need for disability relief.

These statements, or for that matter, any other statements by Ahearn simply do not describe the substantial and material duties of a general dentist. Moreover, as a dentist, rather than an orthopedic physician, pain specialist or other appropriate practitioner, Dr. Ahearn has no business commenting on the severity of Dr. Goodman's physical impairments. Dr. Ahearn's testimony should be limited to the substantial and material duties of a general dentist and the physical requirements of those duties. Dr. Ahearn is not qualified to comment on the nature of Dr. Goodman's medical conditions or their severity. Those issues must be left to experts in the field of medicine, who can discuss what restrictions Dr. Goodman's medical conditions impose upon him.

Dr. Ahearn's purported testimony is also wholly unreliable in terms of Dr. Goodman's actual impairments. As set forth above, Dr. Goodman has facet arthrosis

and bone growth which not only objectively compresses his nerve roots in his cervical spine, but also presses on Dr. Goodman's spinal cord in his cervical spine. Moreover, Dr. Goodman has objective studies showing radiculopathy and limitation of motion in his neck, shoulder and arm. Dr. Ahearn's opinions regarding Dr. Goodman's orthopedic impairments are not only inappropriate, but they are also dead wrong and unreliable.

Dr. Ahearn's reference to modifications in the workplace are likewise far beyond the scope of the disclosure, have no relevance whatsoever to the insurance policy at issue, and are purely speculative. Dr. Ahearn has never seen Dr. Goodman, has never seen his office, does not know whether Dr. Goodman's employer would be amenable to changes in the office and has provided no specific changes that would suit Dr. Goodman's office environment. Dr. Goodman has always been a "per diem" dentist, who worked for offices owned by others. Even if Dr. Goodman could continue to practice (which he clearly cannot), Dr. Goodman could not dictate the layout of his employer's office. Dr. Ahearn's comments about modifications, therefore, are purely speculative with no basis in fact.

Moreover, since Dr. Ahearn never watched how Dr. Goodman worked or looked at any of the offices at which he worked, Dr. Ahearn could not possibly opine on modifications to any of those offices. Again, Dr. Ahearn's testimony should be limited to testifying about the duties of a general dentist and how those duties are physically performed. The jury can then determine whether Dr. Goodman could

perform those duties with his physical limitations.

Finally, Dr. Ahearn's comments on Dr. Cash (a paid insurance company doctor) being a "notable" rehabilitation physician is completely inappropriate. Dr. Ahearn has not indicated any familiarity whatsoever with Dr. Cash, and even if he did, commenting on another expert's credentials is inappropriate and prejudicial. Indeed, Dr. Ahearn, a dentist, has no medical credentials to comment on Dr. Goodman's physicians, treatment or prognosis. His role was represented to be limited to commenting on what the duties of a dentist does and the physical requirements of those duties. Instead, he has gone far beyond that role to comment on financial records (which he is not qualified to review), medical records (which he is not qualified to interpret) and workplace modifications (which are not specifically addressed, in any way reliable, or relevant to the policies in this action).

WHEREFORE Plaintiff respectfully requests that this Court strike Dr. Ahearn as a witness or in the alternative limit his testimony as set forth above.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court via CM/ECF on this 3rd day of April, 2017, and electronically furnished to Timon V. Sullivan,Esq., of, Ogden & Sullivan  P.A., 113 South Armenia Avenue, Tampa, FL  33609

| | |
|---|---|
| Gregory L. Denes, P.A. | ATTORNEYS DELL & SCHAEFER |
| 300 Mercury Road | CHARTERED |
| Juno Beach, Florida  33408 | Attorneys for Plaintiff |
| (561) 694-91992404 | Hollywood Boulevard |
| (561) 694-2993 (Fax) | Hollywood, FL  33020 |

11

                                                  (954) 620-8300

| | |
|---|---|
| ___/s/ *Gregory L. Denes, Esq.* | _/s/ *Cesar Gavidia, Esq.* |
| Gregory L. Denes, Esq. | CESAR GAVIDIA, ESQUIRE |
| greg@deneslaw.com | cesar@diattorney.com |
| Florida Bar No, 828416 | Florida Bar No.: 015263 |